**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>ERIC CORTEZ SALLIS,<br>Defendant. | No. 17-CR-2017-LRR<br>**ORDER** |

***TABLE OF CONTENTS***


***I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1***

***II. RELEVANT PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . 1***

***III. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2***

***IV. RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 3***

***V. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5***

- ***A. Community Caretaking . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6***
- ***B. Consent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9***
- ***C. Inevitable Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11***

***VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13***


## *I. INTRODUCTION*

The matter before the court is Defendant Eric Cortez Sallis's Objections (docket no. 26) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 20), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 12).

## *II. RELEVANT PROCEDURAL BACKGROUND*

On April 13, 2017, a grand jury returned a two-count Indictment (docket no. 2) charging Defendant with: (1) possession of ammunition by a felon, in violation of 18 U.S.C. §§ 992(g)(1) and 924(a)(2); and (2) possession of a firearm and ammunition by a

felon, in violation of 18 U.S.C. §§ 992(g)(1) and 924(a)(2). The Indictment also contains a forfeiture allegation. On June 8, 2017, Defendant filed the Motion. On June 21, 2017, the government filed a Resistance (docket no. 17). On June 22, 2017, Judge Williams held a hearing ("Hearing") on the Motion. *See* June 22, 2017 Minute Entry (docket no. 18). Defendant appeared in court with his attorney, Jill Johnston. Assistant United States Attorney Lisa Williams represented the government. On June 29, 2017, Judge Williams issued the Report and Recommendation, which recommends that the court deny the Motion. On July 12, 2017, Defendant filed the Objections. On July 14, 2017, Defendant entered a conditional plea of guilty to Count 2 of the Indictment. *See* July 14, 2017 Minute Entry (docket no. 28). On July 17, 2017, Judge Williams issued a Report and Recommendation (docket no. 30), which recommended that the court accept Defendant's plea of guilty. On August 1, 2017, the court accepted the July 17, 2017 Report and Recommendation. *See* Order Accepting Conditional Guilty Plea (docket no. 32). The matters are fully submitted and ready for decision.

## *III. STANDARD OF REVIEW*

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence,

or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## *IV. RELEVANT FACTUAL BACKGROUND*[1]

On November 27, 2016, officers from the Waterloo Police Department responded to a shooting in Waterloo, Iowa. Hearing Transcript at 6. Witnesses identified Defendant as the shooter. *Id.* Law enforcement officials subsequently conducted a search of the residence where the shooting occurred, but did not recover a firearm. *Id.* No arrest warrant was issued as a result of this shooting. *Id.* at 20. However, officers were aware that Defendant had several outstanding arrest warrants for unrelated offenses. *Id.* at 7.

On December 9, 2016, officers from the Waterloo Police Department conducted surveillance at the Pine View Apartment Complex in Waterloo. *Id.* at 13; Government's Exhibit 1 (docket no. 19) at 6. According to a confidential informant, Defendant was staying at the Pine View Apartment Complex in Apartment 205. Based on further investigation, officers concluded that Ecstacy Marshall lived at that apartment. Government's Exhibit 1 at 6. The confidential informant also told officers that children resided in the apartment. Hearing Transcript at 30, 35.

At approximately 9:30 p.m., officers observed Defendant come down the stairs that led to the second floor of the apartment complex. *Id.* at 19. Defendant entered the front passenger seat of a parked vehicle. *Id.* at 12. Shortly thereafter the driver exited the vehicle, retrieved a small silver bag from the trunk, and reentered the vehicle. *Id.*

---

[1] After reviewing the Hearing Transcript (docket no. 24), the court finds that Judge Williams accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-10. Therefore, the court shall only briefly summarize the facts here. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

Officers observed the driver and Defendant smoking something, although they could not discern what the occupants were smoking. *Id.* Defendant then exited the vehicle, wrapped a coat around the silver bag and returned to the apartment complex. *Id.* at 12-13.

At approximately 10:00 p.m., officers again saw Defendant leave the apartment complex from the same staircase, carrying what appeared to be the same silver bag that he had departed with earlier. *Id.* at 13. Defendant entered the right rear passenger seat of a different occupied vehicle. *Id.* Officers approached the car and arrested Defendant on the outstanding warrants. *Id.* at 14. A search of Defendant's person revealed cash and a baggie containing marijuana. *Id.* Officers also found a cell phone, the silver bag containing approximately a quarter pound of marijuana and more than $1,500 cash in the backseat of the vehicle where Defendant had been sitting. *Id.* at 14, 45. Defendant stated he was visiting the apartment, but would not initially identify who lived at the apartment. However, he did tell officers that the resident was on the way. Exhibit 3.[2] Officers placed Defendant in a squad car and Waterloo Police Officer Sullivan read Defendant his *Miranda* rights. *Id.*

Approximately twelve minutes after Defendant was arrested, Sergeant Richter of the Waterloo Police Department and other officers went to Apartment 205—the unit identified by the confidential informant. *Id.* Sergeant Richter approached the door, knocked and called out to ascertain if there were any occupants. *Id.* After receiving no response, Sergeant Richter twisted the doorknob to see if the door was unlocked and opened the door. *Id.* A small boy, who was about four or five years old, came out into the living room and was visible from the door. *Id.* The boy stated that other children were also in the apartment. *Id.* Several other children emerged who appeared to be age

[2] Exhibits 2 and 3 are videos from various officers' body cameras depicting portions of the December 9, 2016 encounter. Exhibits 2 and 3 were offered by the government and accepted by the court at the Hearing. *See* June 22, 2017 Minute Entry at 3.

ten or younger. *Id.* Sergeant Richter conducted a protective sweep of the apartment and found that no adults were present. *Id.* Sergeant Richter then instructed Waterloo Police Officer Del Valle to draft a search warrant application for the apartment. *Id.* Officers waited in the apartment with the children until Marshall returned home. Exhibit 3.

When Marshall arrived at the apartment, officers asked if she would consent to a search of the apartment. *Id.* Marshall responded that she wanted to discuss the matter with Defendant. *Id.* Officer Sullivan accompanied Marshall to the squad car so she could speak with Defendant. *Id.* In the presence of officers, Marshall asked Defendant if he had anything illegal in her apartment and explained that the officers wished to conduct a search. *Id.* After an initial denial, Defendant admitted there was marijuana in the apartment and stated that he would have Marshall "give it to [the officers]." *Id.*

Back in the apartment, Marshall brought Officer Sullivan a tote and a bag that she identified as the Defendant's. *Id.* Officers smelled marijuana and Officer Sullivan observed marijuana in plain view in the bag that Marshall handed him. *Id.* Officers at the scene relayed information about the marijuana to the officers who were writing the search warrant application. Officers elected not to proceed with the consent search and awaited the return of the search warrant. *Id.* Eventually, during their later execution of the search warrant, officers found a silver bag with marijuana, scales, 9mm ammunition and a Sig Sauer 9mm handgun.

## ***V. ANALYSIS***

In the Motion, Defendant seeks to suppress admission of the evidence seized by the officers. In the Report and Recommendation, Judge Williams recommends that the court deny the Motion based on his findings and conclusions included therein. Defendant objects to Judge Williams's conclusions that: (1) the officers had reasonable belief to enter the apartment pursuant to their community caretaking function; (2) Defendant consented to the

search; and (3) even if the officers' entry was illegal, the evidence would still be admissible under the inevitable discovery exception.

### *A. Community Caretaking*

Defendant objects to Judge Williams's conclusion "that it was reasonable for officers to believe that unsupervised children were in the apartment and that consequently, the officers' entry into the apartment was justified pursuant to their community caretaking duties." Objections at 1. First, Defendant contends that "[t]here was no evidence presented regarding why officers believed that the informant was credible." Objections at 1. Second, Defendant asserts that because the officers lacked specific information—such as the number of children in the apartment, their ages or genders—and had not observed any children during their surveillance, their entry into the apartment was not justified under the community caretaking exception. Objections at 2.

Defendant first contends that "[t]here was no evidence presented regarding why officers believed that the informant was credible." Objections at 1. However, as Defendant concedes, the government introduced the "Informant's Attachment in the search warrant." *Id.* The Informant's Attachment indicates that the confidential informant "[i]s a person of truthful reputation," "[h]as no motivation to falsify the information," "[h]as otherwise demonstrated truthfulness," "has supplied information in the past [more than four] times," "has not given false information in the past" and that the "information supplied by the informant in th[e] investigation has been corroborated by law enforcement personnel." Government's Exhibit 1 at 8. In light of the information contained in the affidavit, the court concludes that officers could reasonably rely on the information provided by the confidential informant. *See United States v. Wallace*, 713 F.3d 422, 427 (8th Cir. 2013) ("If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated,

is also reliable."); *United States v. Vinson*, 414 F.3d 924, 930 (8th Cir. 2005) ("Information from a confidential informant may be sufficient to establish probable cause if it is 'corroborated by independent evidence' or if the informant 'has a track record of supplying reliable information.'").

Defendant next asserts that because the officers lacked specific information—such as the number of children in the apartment, their ages or genders—and had not observed any children during their surveillance, their entry into the apartment was not justified under the community caretaking exception. Objections at 2. "The Fourth Amendment generally prohibits police from entering a residence without a warrant, but there are exceptions to the rule." *United States v. Brandwein*, 796 F.3d 980, 984 (8th Cir. 2015) (internal citation omitted). "One exception . . . is the authority of the police to undertake so-called 'community caretaking functions.'" *Id.* Community caretaking includes activities "which are undertaken to help those in danger and to protect property." *United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir. 2006); *see also United States v. Uscanga-Ramirez*, 475 F.3d 1024, 1028 (8th Cir. 2007) ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." (quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978))). "A police officer may enter a residence without a warrant as a community caretaker where the officer has a reasonable belief that an emergency exists requiring his or her attention." *Quezada*, 448 F.3d at 1007. "The 'reasonable belief' required under the community caretaker doctrine 'is a less exacting standard than probable cause.'" *United States v. Smith*, 820 F.3d 356, 360 (8th Cir. 2016) (quoting *Quezada*, 448 F.3d at 1007). The court looks "to the facts known to the officers at the time they made the decision to enter." *Id.* "A search or seizure under the community caretaking function is reasonable if the governmental interest in law enforcement's exercise of that function, based on specific and

articulable facts, outweighs the individual's interest in freedom from government intrusion." *Id*.

In the present case, the confidential informant informed officers on December 9, 2016, that children may be present at the apartment. Hearing Transcript at 41-42. Therefore, officers were aware children were potentially present prior to conducting surveillance. *Id*. at 30. Officers twice observed Defendant leaving the apartment complex from an area consistent with Apartment 205. *Id*. at 29. In speaking with Defendant, officers also learned that the person who resided in the apartment was on her way back to the apartment. *See* Exhibit 3. This information indicated that if children were present, they were not being supervised.

Additionally, Defendant was the suspected shooter in the November 27, 2016 shooting, and the firearm had not yet been recovered. Hearing Transcript at 51. It was reasonable for the officers to be concerned that unsupervised children may have had access to a firearm. *See United States v. Antwine*, 873 F.2d 1144, 1147 (8th Cir. 1989) (concluding that an officer's warrantless entry was justified where he "look[ed] for the weapon that previously had been exhibited, so as to not leave the children alone with the weapon"). Marijuana was also recovered from Defendant, and officers were concerned additional marijuana may be located in the apartment. These factors provide additional support for the conclusion that children—although their ages may not be known—were unsupervised in the apartment and potentially in danger. *See United States v. Tamborello*, No. 10-CR-0028, 2010 WL 2802603, at *6 (N.D. Iowa July 15, 2010) ("[T]he officers could have reasonably believed that there was a weapon in the house and allowing the weapon to remain with two unsupervised nine-year-old boys could be dangerous.").

Furthermore, the officers' conduct in approaching and entering the apartment was consistent with the community caretaking function. Sergeant Richter knocked on the apartment door and asked if anyone was present. Exhibit 3; Hearing Transcript at 52.

Upon receiving no response, Sergeant Richter turned the doorknob and found it was unlocked. Exhibit 3; Hearing Transcript at 52. The door opened a short distance and Sergeant Richter observed a small boy who was approximately four or five years old. Hearing Transcript at 52. While remaining outside the apartment, Sergeant Richter asked the boy if he was alone. *Id.* at 54, 55. Several children emerged from a hallway and Sergeant Richter asked whether anyone was watching them. *Id.* The children responded their Uncle Eric was watching them and, because Defendant had been arrested, Sergeant Richter ascertained that there were no adults in the apartment. Sergeant Richter conducted a sweep to determine how many people were in the apartment and then had all children sit in the living room with officers until Marshall returned. *See also Smith*, 820 F.3d at 362 (finding no Fourth Amendment violation where "the scope of the encounter was carefully tailored to satisfy the [community caretaking] purpose"); *Antwine*, 873 F.2d at 1147 (finding no Fourth Amendment violation where "the scope of [the officer]'s warrantless search did not exceed what was necessitated by the exigency" and the officer "did not look for the stolen money" or for other evidence related to the crime). The officers had a reasonable belief that children were unattended in the apartment, potentially with access to a weapon, and therefore their warrantless entry was justified. The court further notes that during their entry into the apartment for caretaking purposes, officers did not recover anything of evidentiary value until after Marshall returned home. Accordingly, Defendant's objection to the applicability of the community caretaking exception is overruled.

### *B. Consent*

Defendant also objects to Judge Williams's conclusion that Defendant "freely consented to officers seizing the marijuana." Objections at 4. Defendant asserts that the government failed to present evidence regarding the voluntariness of Defendant's consent. *Id.* at 3-4.

"While the Fourth Amendment requires the police to obtain a warrant before a search, consent is a valid exception to the warrant requirement." *United States v. Guzman*, 507 F.3d 681, 687 (8th Cir. 2007) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). "The government bears the burden to prove by a preponderance of the evidence that consent to search was freely given." *United States v. Aguilar*, 743 F.3d 1144, 1147 (8th Cir. 2014) (quoting *United States v. Arciniega*, 569 F.3d 394, 398 (8th Cir. 2009)). "One's consent to a search is voluntary if it results from 'an essentially free and unconstrained choice' rather than from 'duress or coercion.'" *United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998) (quoting *United States v. Galvan-Muro*, 141 F.3d 904, 907 (8th Cir. 1998); *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990)). Courts consider a variety of factors in determining whether consent was voluntary, including: "a defendant's age, intelligence, and education; whether he cooperates with police; his knowledge of his right to refuse consent; and his familiarity with arrests and the legal system." *United States v. Bearden*, 780 F.3d 887, 895 (8th Cir. 2015). Courts also consider "environmental" factors in determining the voluntariness of consent, including: "whether [law enforcement] threatened, intimidated, punished, or falsely promised something to the defendant; whether the defendant was in custody or under arrest when consent was given and, if so, how long he had been detained; and whether consent occurred in public or secluded area." *Id.*

Defendant concedes that officers read him his *Miranda* rights. *See* Exhibit 3. This factor weighs in favor of finding that Defendant's consent was voluntary. *See United States v. Comstock*, 531 F.3d 667, 677 (8th Cir. 2008); *see also United States v. Lee*, 356 F.3d 831, 834 (8th Cir. 2003) ("*Miranda* warnings . . . can lessen the probability that a defendant was subtly coerced."). Defendant points to the fact that he was in custody at the time consent was given as indication his consent was involuntary. Objections at 3-4. However, the Eighth Circuit has "expressly recognized that even persons who have been

arrested and are in custody can voluntarily consent to a search." *Comstock*, 531 F.3d at 678 (internal quotation marks and alterations omitted) (quoting *Chaidez*, 906 F.2d at 382). Defendant was taken into custody at approximately 10:10 p.m. Exhibit 3. Defendant told officers that he would instruct Marshall to retrieve his belongings at approximately 10:38 p.m., less than thirty minutes after he had been taken into custody and less than fifteen minutes after he had been read his *Miranda* rights. *See id.* Due to the relatively brief time between Defendant's arrest and his consent to search, this factor does not meaningfully weigh against a finding of voluntariness.

Importantly, Defendant's statements were not the result of officer questioning. Rather, Marshall initially asked Defendant if there was anything left in the house. *See id.* Officer Sullivan then told Defendant that Marshall did not want the stuff around her children. *See id.* Defendant's subsequent statements were clear. He told officers there was "more stuff" in the apartment and he instructed Marshall to give the marijuana to the officers. Upon review, the court finds by a preponderance of the evidence that Defendant consented to officers seizure of the marijuana and, under the totality of the circumstances, that Defendant's consent was voluntary.

Accordingly, Defendant's objection to the applicability of the consent search exception is overruled.

### *C. Inevitable Discovery*

Defendant objects to Judge Williams's conclusion that, regardless of the above claims, the inevitable discovery doctrine applies and does not bar admission of the evidence. Objections at 4-5. Defendant contends that "[i]t is just as likely that a judge would not have issued a search warrant" without the information obtained after officers entered the apartment "as it is that a judge would have issued the warrant." *Id.* at 4. Defendant asserts that prior to the officers' entry, "there was only a modicum of

information upon which a judge could conclude that [Defendant] was associated with [A]partment #205." *Id.* at 5.

Where evidence is discovered as a result of the government's violation of the Fourth Amendment, that evidence should not be suppressed "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). To show that the evidence would have inevitably been discovered, the government must establish

> by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.

*United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)). *But see United States v. Thomas*, 524 F.3d 855, 860 (8th Cir. 2008) (Colloton, J., concurring) (arguing that this two-pronged test is both overinclusive and underinclusive, and is inconsistent with Supreme Court precedent).

Upon review, the court finds by a preponderance of the evidence "that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct." *McManaman*, 673 F.3d at 846. First, although the officers did not observe Defendant leave from a specific apartment, his departure was consistent with an apartment on the second floor. Additionally, the confidential informant informed officers that Defendant was residing in Apartment 205. It is well established that "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant." *United States v. Hart*, 544 F.3d 911, 914 (8th Cir. 2008). As addressed above, the government established that the confidential informant was reliable. *See* Exhibit 1 at 8. The warrant application addendum relayed information

provided by the confidential informant, explained what officers observed during their surveillance, noted that Defendant had twice come from the apartment complex to parked cars and stated that, when officers made contact at the vehicle, they found marijuana, cash and a cell phone in the backseat. *Id.* at 6-7. This information provided a sufficient basis for securing a search warrant for the apartment. The government proved a reasonable probability that the evidence would have been discovered by lawful means in the absence of any alleged police misconduct.

Second, the government's Exhibits 2 and 3 establish that as of 10:17 p.m., Sergeant Richter made statements regarding the "SW,"[3] including a statement that he needed someone to go and type the "SW." Exhibit 2. Although Sergeant Richter did not send Officer De Valle to execute the search warrant until 10:23 p.m., after Sergeant Richter had conducted a protective sweep of the apartment, it is evident that officer's were already in the process of securing a warrant. This conclusion is bolstered by Waterloo Police Officer Woodward's testimony that he had almost completed the search warrant application at the time the officer's on the scene had conveyed the additional information to him. *See* Hearing Transcript at 18.

Therefore, the government has established that the evidence would have been discovered.

## *VI. CONCLUSION*

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 26) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 20) is **ADOPTED**; and

(3) The Motion to Suppress (docket no. 12) is **DENIED**.

---

[3] Sergeant Richter testified that his use of "SW" referred to a search warrant. Hearing Transcript at 46.

**DATED** this 7th day of August, 2017.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA